## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**CARL JONES,**

            Plaintiff,                              Case No.

vs.

                                               HON.

**FCA US LLC,**
a Delaware limited liability company,

            Defendant.

---

**GASIOREK, MORGAN, GRECO,**
**McCAULEY & KOTZIAN, P.C.**
By:  Raymond J. Carey (P33266)
Attorneys for Plaintiff
30500 Northwestern Highway, Suite 425
Farmington Hills, MI 48334
(248) 865-0001 (phone)
(248) 865-0002 (fax)
rcarey@work-lawyers.com

## <u>COMPLAINT</u>

Plaintiff Carl Jones ("Plaintiff" or "Mr. Jones"), by his attorneys, GASIOREK, MORGAN, GRECO, McCAULEY & KOTZIAN P.C., for his Complaint against Defendant FCA US LLC ("FCA" or "Defendant") states as follows:

1.      This is an action for employment discrimination and interference on account of age in violation of   the Age Discrimination in Employment Act("ADEA"), as amended, 29 U.S.C. §§621, *et seq.*;   and employment

discrimination and interference on account of race and sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e, *et seq.,* arising out of the circumstances leading up to and including Plaintiff's forced retirement/wrongful termination of his almost 40 year employment relationship with FCA US LLC and its predecessor entities ( collectively "FCA" or "Company"), effective January 27, 2020.

## PARTIES

2.      Plaintiff Carl Jones is an individual who currently resides in Rochester Hills, County of Oakland, State of Michigan.

3.      Defendant FCA US LLC is a Delaware limited liability company with offices and a principal place of business in Auburn Hills, County of Oakland, State of Michigan.

## JURISDICTION AND VENUE

4.      The amount in controversy exceeds $75,000 exclusive of interest and costs.

5.      This Court has subject matter jurisdiction over Plaintiff's claims under and pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C.§1343 (civil rights); 29 U.S.C. §§621, *et seq.* (violation of the ADEA); and 42 U.S.C. §§ 2000e (violation of Title VII), *et seq.*

6.     This Court has personal jurisdiction over Defendant because the company maintains offices and facilities and engages in regular and systematic business and other activities within the Eastern District of Michigan and the acts attributed to Defendant that give rise to Plaintiff's claims occurred within the Eastern District of Michigan.

7.     Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 18, 2020, asserting that Defendant engaged in discrimination against him on account of his age in violation of the ADEA and engaged in discrimination against him on account of his race and sex in violation of Title VII.

8.     Plaintiff's Charge of Discrimination was filed within the 300-day period after January 27, 2020, when Defendant terminated his employment.

9.     The EEOC mailed Notice of Suit Rights to Plaintiff with respect to the above referenced Charge of Discrimination on February 12, 2021, which was received by Plaintiff on February 17, 2021, and Plaintiff is filing this complaint to include claims for discrimination and interference against him on account of his age in violation of the ADEA and discrimination and interference against him on account of his race and sex in violation of Title VII within the requisite 90 day period after he received the notice.

3

10.    Venue is proper in this district court pursuant 28 U.S.C. §1391(b) and (c) because Plaintiff resides and Defendant is located within the Eastern District of Michigan and the events that give rise to Plaintiffs' claims occurred within the Eastern District of Michigan.

11.    Venue also is convenient in this judicial district.

## COMMON FACTUAL ALLEGATIONS

12.    Mr. Jones is a Caucasian male who was born on March 16, 1956, and is 65 years of age.

13.    Mr. Jones was first hired by FCA in 1978 and rehired in October, 1983, after having been laid off.

14.    Mr. Jones's most recent position with FCA, the position he held when he was forced to retire/wrongfully terminated from his FCA employment, was Engineering Support Analyst in the Catalyst Lab in the Advanced Regulatory and Planning Department headed by Mr. Mark Shost. Mr. Michael Zammit had been his manager.

15.    Mr. Jones consistently received performance evaluations throughout his employment with FCA evincing that he performed his job responsibilities in more than a satisfactory manner and recognizing that he was a dedicated, hard-working, and committed FCA employee.

4

16.    Mr. Jones was well-liked by his superiors and peers.

17.    Mr. Jones had not engaged in misconduct of any kind and had not been subjected to formal discipline of any kind at any time before January 27, 2020.

18.    Ms. Rachell Schmidt, who is significantly younger than Mr. Jones, was hired around October, 2019, and Mr. Brian Price, who also is significantly younger than Mr. Jones, was transferred around October, 2019, from another work location to work in the Catalyst Lab to assist with Catalyst lab purchases, lab procedures, setting up catalyst emissions testing and development, set-up for EPA catalyst aging, OBD aging, Dyno support, and mule builds, among other functions.

19.    Ms. Schmidt used a desk in the Catalyst Lab that was approximately 5 feet from where Mr. Jones's desk was located, Mr. Price used one that was approximately 10 feet from where Mr. Jones's desk was located, and the other desk in the lab was used by Mr. Rick Maddox.

20.    Mr. Jones was assigned to work directly with and train Ms. Schmidt and Mr. Price with respect to Catalyst Lab operations, systems, and processes, including but not limited to, training each of them with respect to FCA databases, spread sheets, EBOM, Fastcar2, and the COBRA ordering system for

which Mr. Jones was the administrator; the need for frequent and timely updating of charts and tables to support Catalyst Lab operations, shipping, and receiving; how to organize and write orders and quotes; and methods to communicate with 14 different suppliers and many other engineering labs at CTC/CPG/ARC and supplier work sites to ensure Catalyst Lab responsibilities were timely, cost efficiently, and otherwise properly effectuated.

21.    Mr. Jones counseled Ms. Schmidt and Mr. Price that Cobra Log entries should be thorough enough to be easily accessible and readily understood both at the time of entry and for long periods of time by FCA representatives within the Advanced Regulatory and Planning Department, Engine Systems, OBD Development, Calibrators, Development and Engineering, Finance, Purchasing and others for engineering related reasons.

22.    Mr. Jones also advised them that information in another Catalyst Lab database is used for internal and external department use and that it needs to be updated on a daily basis because it contains detailed expense reports, internal timing of projects, supplier timing, costs, deliveries, and fabrication builds that are used by FCA management, engineering, finance and purchasing representatives for budgeting, forecasting and processing reports.

23.     Mr. Jones had provided similar training to approximately 50 other employees with respect to Catalyst Lab operations, systems, and processes during the past 20 years.

24.     On January 14, 2020, at 3:00 p.m., Mr. Jones was summoned to a meeting at the FCA CTC building conference room W2001B with Power Train Engineering Human Resources Representative, Robin Perry, and another FCA Human Resources representative.

25.     Mr. Jones had received no advance notice of the meeting or purpose for which it was to be convened.

26.     Mr. Jones also was not specifically advised of its purpose during the course of the meeting.

27.     Instead, it became apparent to Mr. Jones based on the topics of the few questions he was asked by Ms. Perry during the meeting that Ms. Schmidt or someone on her behalf had made vague and false allegations of misconduct against him arising out of his efforts to train Ms. Schmidt and Mr. Brice.

28.     In this regard, Mr. Jones was asked a vague question by Ms. Perry suggesting that Ms. Schmidt had accused him of sitting too close to her, improperly touching her, and making inappropriate statements to her during training.

29.    Mr. Jones gave a detailed response to Ms. Perry's question during the meeting and in a subsequent email evincing what actually occurred during training and why there was no merit to such allegations if these had been made.

30.    Mr. Jones also was asked a vague question by Ms. Perry about Ms. Schmidt's adverse reaction to him in mid to late December, 2019, when Mr. Jones commented and made suggestions about the reorganization of Catalyst Lab inventory conducted by Ms. Schmidt, Mr. Price, and Mr. Mitch Hall, and in early January, 2020, when Mr. Jones commented and made suggestions to Ms. Schmidt about the need for her to make more thorough Cobra log entries and to timely update information in the other database.

31.    Mr. Jones explained in detail during the meeting and in the subsequent email what actually occurred and the legitimate business-related reasons for his comments and suggestions.

32.    Ms. Perry did not advise Mr. Jones during the course of the January 14, 2020, meeting or at any time before January 27, 2020, that she ostensibly was conducting an investigation into whether Mr. Jones had engaged in conduct that violated FCA Policy 3-6.

33.     Ms. Perry did not provide Mr. Jones with a copy of the policy or ask whether he had knowledge of it during the January 14, 2020 meeting or at any time thereafter.

34.     Ms. Perry also did not apprise Mr. Jones of the specifics of any FCA Policy 3-6 allegations if these had been made about him, allow him to respond to any such allegations had these been made about him, or question him about any alleged conduct that is indicative of a violation of FCA Policy 3-6 as defined in the policy during the January 14, 2020 meeting or thereafter.

35.     Despite this, Ms. Perry told Mr. Jones at the conclusion of the January 14, 2020 meeting that he was not to return to work and should work remotely until further notice.

36.     On January 27, 2020, Ms. Perry contacted Mr. Jones by phone.

37.     Mr. Jones had anticipated that she would advise him during the call that he was authorized to return to work.

38.     Instead, Ms. Perry initially read out-loud to Mr. Jones what is articulated in a letter from her, dated January 27, 2020, notifying him that "the decision has been made that you can no longer continue your employment at FCA" ostensibly because an investigation conducted by her disclosed that he had engaged in behavior that violated FCA Policy 3-6 although she did not

9

describe the behavior for which he allegedly was culpable and that ostensibly violated FCA Policy 3-6.

39.    Mr. Jones became distraught when Ms. Perry told him of this outcome.

40.    Mr. Jones asked if there was a process by which he could appeal from this action or whether there was any other means of recourse available to him, including counseling in lieu of cessation of his employment.

41.    Mr. Perry responded, "No."

42.    Ms. Perry then discussed with Mr. Jones the financial and benefit related consequences of an involuntary termination of employment in contrast to consequences of a forced retirement to coerce Mr. Jones into opting for forced retirement.

43.    Mr. Jones opted for the forced retirement. Effective January 27, 2020, as confirmed by Mr. Zammit in his 2019 Performance and Leadership Assessment of Mr. Jones because Ms. Perry told him that he had no viable alternative.

44.    Upon realizing that she had coerced Mr. Jones to retire, Ms. Perry tried to suggest throughout the remainder of the telephone call and in a

subsequent email indicated that Mr. Jones had voluntarily opted to retire although she knew this was not true under the circumstances.

45.     Neither Ms. Perry nor anyone else involved in the decision to force Mr. Jones's retirement or to otherwise terminate his employment from the Company gave due consideration to Mr. Jones's 40 year history of more than satisfactory job performance, his previous, unblemished disciplinary record, the routine recognition he received for his dedication, hard work, and commitment as a FCA employee, and the actual nature of the alleged conduct for which he was deemed culpable and whether this warranted lesser discipline or corrective action rather than his forced retirement/involuntary termination of his employment from the Company.

46.     Mr. Jones's age, race, and sex were a motivating factor in the decisions by Ms. Perry and other involved FCA representatives to force Mr. Jones's retirement or to otherwise terminate his employment from the Company.

47.     Ms. Perry and other FCA representatives involved in the decision to Ms. Perry and other FCA representatives involved in the decision to force Mr. Jones's retirement or to otherwise terminate his employment from the Company treated Mr. Jones differently than similarly situated younger, female and non-Caucasian employees who engaged in and/or were accused of similar

11

acts of alleged misconduct, but whose employment was not terminated as a consequence.

48.     Mr. Jones was replaced in his former job by a significantly younger, less experienced and less qualified individual.

49.     The reasons for Mr. Jones's forced retirement or termination of his employment from the Company are false and pretexts for his forced retirement or termination of his employment from the Company because his age, race, and sex and are an attempt to cover-up FCA's failure or refusal to treat Mr. Jones the same as similarly situated younger, female and non-Caucasian employees who engaged in and/or were accused of similar acts of alleged misconduct, but whose employment was not terminated as a consequence..

## COUNT I – VIOLATION OF THE ADEA
## – AGE DISCRIMINATION

50.     Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter re-iterated paragraph by paragraph.

51.     At all times relevant, Plaintiff was an employee covered by and within the meaning of 29 U.S.C. §630 (f) and Defendant was his employer covered by and within the meaning of 29 U.S.C. §630 (b).

52.   At all times relevant, Defendant was a "person" as this term is defined by 29 U.S.C. §630 (a) and Ms. Perry was an agent of Defendant with respect to terms and conditions of and the termination of Plaintiff's former FCA employment.

53.   At all times relevant herein, under the ADEA and 29 U.S.C. § 623, Plaintiff had a right to employment with Defendant free from discrimination against him and interference with his rights based on his age.

54.    Defendant through its representatives illegally, maliciously, and wrongfully conspired with each other with the intent to and for the illegal purpose of discriminating against Plaintiff on account of his age and depriving Plaintiff of his rights under the ADEA.

55.     Defendant FCA and its representatives violated Plaintiff's rights under the ADEA by:

     a.   Forcing Plaintiff to retire and/or terminating his employment without cause and because of his age;

     b.   Treating Plaintiff differently than similarly situated younger FCA employees with respect to allegations of misconduct, investigation of such allegations, corrective action, discipline, and discharge;

     c.   replacing Plaintiff with a less qualified, younger individual without cause and because of his age; and

     d.   Otherwise discriminating against and disparately treating Plaintiff on the basis of his age with respect to

compensation and the terms, conditions and privileges
of his employment.

56.    As a direct and proximate result of FCA's aforementioned
intentional violation of Plaintiff's civil rights as set forth by the ADEA, Plaintiff
has and will continue to suffer damages, including but not limited to: the loss of
employment; the loss of salary, retirement, health care, and other fringe
benefits, and bonuses, both past and future; humiliation, mortification,
embarrassment, and shock; mental, emotional and physical pain, suffering, and
distress; and damage to his personal and professional reputation.

## COUNT II– VIOLATION OF Title VII
## – RACE DISCRIMINATION

57.    Plaintiff re-alleges and incorporates by reference each and every
paragraph of this Complaint as if hereinafter re-iterated paragraph by
paragraph.

58.    At all times relevant, Plaintiff was an employee covered by and
within the meaning of 42 U.S.C. §§ 2000e(f) and Defendant was his employer
covered by and within the meaning of 42 U.S.C. §2000e (b).

59.    At all times relevant, Defendant was a "person" as this term is
defined by 42 U.S.C. §2000e (a) and Ms. Perry was an agent of Defendant with
respect to terms and conditions of and the termination of Plaintiff's former FCA
employment.

60.    At all times relevant herein, under Title VII and 42 U.S.C. § 2000e-2(a), Plaintiff had a right to employment with Defendant free from discrimination against him and interference with his rights based on his race.

61.    Defendant through its representatives illegally, maliciously, and wrongfully conspired with each other with the intent to and for the illegal purpose of discriminating against Plaintiff on account of his race and depriving Plaintiff of his rights under Title VII.

62.    Defendant FCA and its representatives violated Plaintiff's rights under Title VII by:

> a.    Forcing Plaintiff to retire and/or terminating his employment without cause and because of his race;
>
> b.    Treating Plaintiff differently than similarly situated non-Caucasian FCA employees with respect to allegations of misconduct, investigation of such allegations, corrective action, discipline, and discharge;
>
> c.    replacing Plaintiff with a less qualified, younger individual without cause and because of his race; and
>
> d.    Otherwise discriminating against and disparately treating Plaintiff on the basis of his race with respect to compensation and the terms, conditions and privileges of his employment.

63.    As a direct and proximate result of FCA's aforementioned intentional violation of Plaintiff's civil rights as set forth by Title VII, Plaintiff has and will continue to suffer damages, including but not limited to: the loss of

employment; the loss of salary, retirement, health care, and other fringe benefits, and bonuses, both past and future; humiliation, mortification, embarrassment, and shock; mental, emotional and physical pain, suffering, and distress; and damage to his personal and professional reputation.

### COUNT III – VIOLATION OF Title VII – SEX DISCRIMINATION

64.    Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter re-iterated paragraph by paragraph.

65.    At all times relevant, Plaintiff was an employee covered by and within the meaning of 42 U.S.C. §§ 2000e(f) and Defendant was his employer covered by and within the meaning of 42 U.S.C. §2000e (b).

66.    At all times relevant, Defendant was a "person" as this term is defined by 42 U.S.C. §2000e (a) and Ms. Perry was an agent of Defendant with respect to terms and conditions of and the termination of Plaintiff's former FCA employment.

67.    At all times relevant herein, under Title VII and 42 U.S.C. § 2000e-2(a), Plaintiff had a right to employment with Defendant free from discrimination against him and interference with his rights based on his sex.

68.     Defendant through its representatives illegally, maliciously, and wrongfully conspired with each other with the intent to and for the illegal purpose of discriminating against Plaintiff on account of his sex and depriving Plaintiff of his rights under Title VII.

69.     Defendant FCA and its representatives violated Plaintiff's rights under Title VII by:

      e.    Forcing Plaintiff to retire and/or terminating his employment without cause and because of his sex;

      f.    Treating Plaintiff differently than similarly situated female FCA employees with respect to allegations of misconduct, investigation of such allegations, corrective action, discipline, and discharge;

      g.    replacing Plaintiff with a less qualified, younger individual without cause and because of his sex; and

      h.    Otherwise discriminating against and disparately treating Plaintiff on the basis of his sex with respect to compensation and the terms, conditions and privileges of his employment.

70.     As a direct and proximate result of FCA's aforementioned intentional violation of Plaintiff's civil rights as set forth by Title VII, Plaintiff has and will continue to suffer damages, including but not limited to: the loss of employment; the loss of salary, retirement, health care, and other fringe benefits, and bonuses, both past and future; humiliation, mortification,

embarrassment, and shock; mental, emotional and physical pain, suffering, and distress; and damage to his personal and professional reputation.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Carl Jones respectfully requests that this Honorable Court grant the following remedies:

a. Declare that the aforementioned practices and actions of Defendant are unlawful;

b. Declare that Defendants' acts and practices outlined above are in violation of the ADEA and Title VII;

c. Enjoin and permanently restrain these practices;

d. Direct Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

e. Award Plaintiff all lost past, present and future salary, bonuses, incentive compensation, and benefits to which he is entitled and the value of all lost past, present and future employee healthcare, retirement, 401(K), pension, and other fringe benefits to which he is entitled;

f. Award Plaintiff liquidated damages for Defendants' violations of the ADEA;

g. Award Plaintiff compensatory and punitive damages for Defendants' violations the ADEA and Title VII;

18

h.    Award Plaintiff compensatory damages for mental anguish, emotional distress, humiliation and injury to his reputation;

i.    Award Plaintiff punitive and/or exemplary damages;

j.    Award Plaintiff's reasonable attorney fees and costs, including expert witness fees; and

k.    Grant such other legal or equitable relief as this Court deems appropriate.

Respectfully submitted,

**GASIOREK, MORGAN, GRECO, McCAULEY & KOTZIAN P.C.**

BY:    _/s/Ray Carey_
       Raymond J. Carey (P33266)
       Attorneys for Plaintiff
       30500 Northwestern Highway, Suite 425
       Farmington Hills, MI 48334
Dated: May 10, 2021        (248) 865-0001
       rcarey@gmgmklaw.com

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff Carl Jones, by his attorneys, GASIOREK, MORGAN, GRECO, MCCAULEY & KOTZIAN P.C., demands a trial by Jury.

Respectfully submitted,

**GASIOREK, MORGAN, GRECO, MCCAULEY & KOTZIAN, P.C.**

BY:     /s/Ray Carey
Raymond J. Carey (P33266)
Attorney for Plaintiff
30500 Northwestern Hwy, Ste. 425
Farmington Hills, MI 48334
(248) 865-0001
rcarey@gmgmklaw.com

Date: May 10, 2021